Mr. Silbert, good morning to you, sir. Welcome to the Court. Please proceed. You're reserving 10 minutes for rebuttal, I understand, and when the yellow light goes on, you're beginning to consume that reserved time. It's up to you, but we're going to have to hold people to the stipulated time, so keep that in mind, please. Go ahead. Thank you, Your Honor, and may it please the Court. With respect to the D.C. Circuit's rulings in Northern States Power and Indiana, Michigan, the decision below got it wrong. What the D.C. Circuit did in those cases was appropriate for many reasons. In Indiana, Michigan, the D.C. Circuit interpreted DOE's statutory obligation. That Court was clearly within its authority to declare what that statute meant in response to DOE's final agency action, claiming that its obligation under the Nuclear Waste Policy Act was conditional. The D.C. Circuit's subsequent decision in Northern States Power enforced that prior statutory interpretation in the face of the Department of Energy's attempt to nullify that interpretation by asserting that any delay was unavoidable. The D.C. Circuit scrupulously and carefully decided and explained that it would not intrude on the Court of Federal Claims Tucker Act jurisdiction, and its decisions, both the published decision and the decision of May 1998, made that very clear. Does the statute address the question of remedy? The Nuclear Waste Policy Act? Yes. The jurisdictional statute provides that? No, I mean remedy for a violation of the statute or for a breach of the contract. No, it doesn't. Section 706 of the APA provides those kinds of remedies, but it's clear from the face of Section 119 that the D.C. Circuit was entitled to hear that claim. But aren't we dealing here with a question of remedy? And if we assume that the Indiana, Michigan case, there wasn't anything wrong with the D.C. Circuit's addressing that, but and that the only issue is whether it could foreclose reliance on the unavoidable delays clause as a way of eliminating the damages from it, aren't we dealing with a remedial question? That is, for example, whether the remedy for the breach should be restitution, which is a typical remedy for impossibility situations, or whether it should be breach damages? Aren't those remedial questions outside the scope of the statute and for the Board of Federal Claims rather than the D.C. Circuit? Well, those questions are remedial questions, Your Honor, but what the D.C. Circuit did in Northern states' power was to enforce its statutory interpretation. It believed that the Department did not get the message. It believed that Well, I understand that, but I don't think you're answering my question. Why is it the D.C. Circuit's task in interpreting the statute to decide between restitution and damages or some other remedy? Isn't that remedial question as to how the breach is going to be remedied one for the Court of Federal Claims? Well, the D.C. Circuit in the May 5, 1998 decision and in the earlier decision, I think, was clear to say it was not determining what the remedy was under the standard contract. It was saying it was directing the utilities to go to the Court of Federal Claims to exercise their rights under the standard contract. It did not say what the remedy was. Well, but it foreclosed reliance on the unavoidable delays clause as an issue before the Court of Federal Claims. In other words, it was saying the damages remedy has to be made available as opposed to restitution or some other remedy. But it was saying that the statutory interpretation which it had set forth would be inconsistent with the view that the Department of Energy had expressed and that if the Court had not expressed that view and determined that the unavoidable delays clause was inconsistent with the unconditional obligation, it in essence would have given up its statutory interpretation and would have been told by the Department of Energy, we heard what you said, we understand that it's an unconditional obligation, but we're just not going to pay attention because that obligation is conditional. Well, how is a restitution remedy inconsistent with the conclusion that there's a statutory obligation? Well, first of all, we don't believe that a restitution would be appropriate under this case for a variety of reasons that are outside, I think, the scope of any of these cases. The contract obligation that was imposed on the utilities was something that they had to sign up to. Their licenses depended on it. Many courts have said that they had no choice but to sign those contracts because without those contracts, their Nuclear Regulatory Commission licenses couldn't stand. So restitution, putting the contract aside, avoiding the contract, just wasn't on the table. So I think restitution is not the issue here. I think what we have here is the question of whether the statutory obligation is one that is going to stand up. How would you be worse off if the D.C. Circuit, instead of issuing the specific mandamus directive that it did, had simply issued a declaratory judgment declaring the statutory rights to be what they are? And let's assume for the moment that the D.C. Circuit had jurisdiction to do that. Which declaratory judgment you could presumably plead in the Court of Federal Claims proceeding? How would you be worse off? Well, that's exactly what we did in the Indiana, Michigan case. We got a declaratory judgment saying here's what the statute means. When the Department of Energy issued its preliminary determination that these obligations were not to be considered because the delays were unavoidable, it was putting aside what the Court had told them. This was not an independent action to the D.C. Circuit. We had already been there. We had gotten our declaratory judgment. The Court, after we went in to seek enforcement of that judgment, and after DOE said the delays are unavoidable, don't pay any attention to that, the Court then said to DOE, you didn't get the message. We are reinforcing what we told you about your statutory obligation. I understand. But suppose they had simply said you didn't get the message, here's the message again, and we are now confident that you will get the message because this is what the statute provides. I'm having a hard time understanding why you are worse off, would be worse off, if you had simply had that declaratory judgment, assuming again that you had been, that the D.C. Circuit had jurisdiction to issue that judgment. Well, we think that they did have, and I'll be... Well, I understand, but I'm assuming that in your favor. But we didn't ask for the partial mandamus order. We had a set of relief requests. The D.C. Circuit developed, and I think you probably have to ask them. I think if we had gotten a declaratory judgment, that would have been fine. I think it was perfectly appropriate for the D.C. Circuit, seeing what they were faced with, to issue that order because they saw, and I think legitimately saw, that the Department of Energy was not paying attention to what they had been told. But you would agree then that they didn't need to prohibit the government from making that argument, that it should have and would have been sufficient for the D.C. Circuit to order a D.J., and you would argue that the Court of Claims would have been compelled to rely on that statutory interpretation, right? I think if they had issued a declaratory judgment, the Court of Federal Claims would have been obliged to, but they didn't. What they issued was the partial mandamus order, not a broadly written one, the way the government would characterize, but a very limited one to enforce their prior decision. They gave specific directions to the Department of Energy on how to proceed in the Indiana-Michigan case. The Department of Energy didn't do that. If you are sitting here and a petitioner comes before you, or a respondent is before you, and you tell them what you believe the proper course of action should be, and they come back and stick their finger in your eye, so to speak, I think the Court is perfectly entitled to take that action and say, look, please get our message. We told you once, and now we're telling you another time. But that's all right if it's within their jurisdiction to do that, isn't it? And then in the first case, the Indiana Power case, they said those clauses are in the contract. The second case where you asked for a full mandamus and they gave you a partial mandamus, they specifically said, don't worry about those contract clauses because one of them is not enforceable. You cannot plead unavoidable delay, period. Now, that's not an interference with the contractual relationship? Well, the fact that a statutory interpretation has implications for a contractual relationship doesn't mean that the statutory interpretation is void. That's what the Megapulse case says. We cite it in our briefs. Robert says the same thing. Well, but they essentially said that it's contractual remedies that we are interpreting. We're interpreting not the ability to have that clause in the contract and not to have it in the contract. We're saying that the clause is not available, and that's a remedy within the contract. And if you're limiting the remedy within the contract, aren't you limiting the contract itself? You're having an effect on the contract in order to enforce the statutory interpretation. No, no, no, no. My question is whether or not the remedy itself is limited by that action. As a result of there being a violation of the statute, I think that. It's no different than if they had said, well, we don't really think it's 1998. I don't care what the statute says. I don't care what the D.C. Circuit says. We're going to say it's 1999. And I think a court is perfectly entitled to say you can't interpret the contract in a way that violates the statute. If DOE, when it issued the standard contract in 1983, had written a clause that wrote into the contract the interpretation that they now say is the one that they favor, the D.C. Circuit, if it had been challenged, would have read it at that time. And as it did in the General Electric case, Wisconsin Electric, and there were other cases that looked at the standard contract as a contract, the D.C. Circuit would have been perfectly entitled to say you're overreaching. But that's not what they were, was before. That was not the issue before as to whether or not that clause could be in a contract. That clause was in the standard contract. If it was a challenge at that particular time within the statutory time period of 180 days as to whether or not the contract could contain that clause, that's another issue. But once that contract is in play with respect to both parties, how can we say that the second determination made by the D.C. Circuit was not an invasion of the remedies available to the government under the contract? Because at the time we challenged it, we had no remedy before the Court of Federal Claims or this Court. There was no breach. The PSEG decision says you couldn't go there until 1998. There were no damages. There was no way to challenge what the Department was doing. But the D.C. Circuit's ruling had no purpose, the mandamus ruling had no purpose other than to govern the conduct of the breach of contract case, right? I mean, we had been forward-looking, but that was the purpose of the litigation of the breach of contract case. I would respectfully disagree. I think the purpose was to say we meant it when we gave you our statutory interpretation. We think you're doing an end-around our statutory interpretation. What if the D.C. Circuit had held that the DOE couldn't raise an unavoidable delays defense because its failure to ever begin the collection was not a delay, as that term is envisioned in the contract? Would that be beyond the scope of their jurisdiction, or would you argue, concede that that would be a contract interpretation issue? I need to know how that would come up before the D.C. Circuit, but I would think that would be verging a lot closer to the contract issue. And one thing I think to bear in mind is the unavoidable delays clause simply doesn't apply here. This Court in Manianke in North States Power has said a delay is not what we're faced with. They said it in the context of the avoidable delays clause, but delay is the same word that's used in both clauses. A delay is a delay. It's unavoidable delay, it's unavoidable avoidable. But when we start talking about delay, that becomes really much clearer a contract interpretation than a statutory interpretation, does it not? And the point I'm making here is a lot of this discussion is academically challenging and academically interesting, but at the end of the day, the unavoidable delays clause doesn't apply here anyway, because this is not a delay. The unavoidable delays clause has a remedy in it. Didn't they preclude a remedy by saying it doesn't apply? They precluded, it had that effect as a contract matter, but it was in the context of the statutory interpretation. Why are you arguing anything about jurisdiction if the Manianke case and the Companion case establish the unavailability of the defense that sought to be pleaded? Why are you making the argument and why would we need to decide anything about the jurisdictional limits of the D.C. Circuit if the Manianke case ends the dispute and says that the defense shouldn't be pleaded because it's futile to plead it because it's already been held by this court to be unavailable? We would agree. The reason we're here to talk about jurisdiction is not because we raised the issue. It's because the government, notwithstanding the partial mandamus order, raised it on its own in January of 2005. The judge below raised it to a higher level and we have to deal with it here because it was applied against our client, Nebraska Public Power District. As we've said in our briefs, we've said all along, this court has determined in Manianke and N.S.P. 2, N.S.P. 3, that we're not dealing with a delay. And so whether you call it avoidable or unavoidable, this act… Isn't that the equivalent of a holding that the defense is unavailable as a matter of law in these circumstances? Yes. That should end the case. We believe it should, Your Honor. So that's an independent ground for you to prevail. Yes, and we have made that point. Why did you put it last in your brief instead of first? We put it first the last time around, and I guess because the question that was posed to us was jurisdiction, and we felt we ought to listen to the question that was posed to us. The other point on the unavoidable delays clause, and there are several, one is that clause says in the first sentence, which deals with failures to perform, the government has argued that's independent of delay, well it can't, those two sentences can't be independent. But even if it were, the failure to perform clause says arising under the contract or under the contract. We're not under the contract, we're in a breach situation. That determination was made in Mann Yankee and NSP. And therefore, even if that clause would apply in a non-breach situation, we're not there. We're in a breach situation and none of this really applies. But we did feel obligated to talk a little bit about jurisdiction because that is the question that you were asked. We also think that a decision below would upset 25 years of really severance. Let me ask you one question. Given the present landscape, you have the Indiana, Michigan, then you have the Mandamus decision that we've been discussing. Even though you might not agree with them, what arguments do you think the government is legally now able to advance in the Court of Federal Claims, leaving aside the decision that's on appeal? But if we were just in the Court of Federal Claims and all that was before us was Indiana, Michigan and the Mandamus decision that we've been discussing, what arguments do you say the Court of Federal Claims could properly entertain from the government? We are in trial almost all the time. We have one starting next Tuesday. We will be talking about acceptance rate. We will be talking about damages. We will be talking about offsets. The typical things you deal with in a damages case, what are the damages? So you say, excuse me, you say the government could raise all arguments it might have in its arsenal with respect to damages. And they do. And we've been through this many times. We know they're expert witnesses. They know ours. We'd like to get beyond that. We've now resolved some of these issues in the PG&E Yankee and SMUD cases that this court decided last, in August of 2008. We're moving ahead to focusing on what are the damages that we have suffered? We are the performing party. We as an industry are paying $750 billion, a million dollars a year to the government. We have paid over the life of this project $20 billion to the government. We are suffering significant damages because the government isn't performing. As you know, they're not going to be, unfortunately, performing for a very long time because Yucca Mountain has been taken off the table. We are the affected party, and we are trying to recover our costs, our mitigation costs, because we are unable to get out of the contract for the reasons that we talked about. Can the government, following up to Judge Schall's question, can the government plead unavoidable delay in their judgment? Well, they've tried to. In any of these cases? They have certainly put it forward if we, you know, they've reserved the right to raise that issue if they could. One thing that the government could do, and they've been able to do it forever, and I don't know why they haven't, they could go back to the D.C. Circuit and say, Your Honors, the writ is no longer appropriate. Please lift it. Times have changed. Legal arguments are different. We're asking for reconsideration. The D.C. Circuit retained jurisdiction in that case. If they have proper jurisdiction in the northern states, right? Well, the D.C. Circuit believes they have jurisdiction, and the government could go back. They've not done that. Instead, the government sat by from the denial of cert in 1999 until they had the opportunity to raise this issue, in our case in January of 2005, and let the world go by. But has the government precluded from raising that issue in other cases, aside from the D.C. Circuit's order and mandamus in this particular case? When you say other cases, other... Other related nuclear power cases. In the Court of Federal Claims? Right. They can try. I think it applies across the board. The partial writ applies to the DOE. Doesn't apply to the courts, obviously. No, I understand that, but is that limited to the northern state power parties, or is it applied directly to others? No, I think it applies to all cases. First of all, in the northern states power case, most, if not all, of the utilities that are currently before this court were parties in that case. So I think it, even if you needed to be a party, I think most of them are. But the government has options, but they sat by while we litigated these cases and invested lots of money in trying to get a proper result, and they didn't do anything. And now they're trying to... Well, what's the point? That they should be stopped from trying to amend their complaint below because of the passage of time? Well, I think they had some obligation... No, but what's the legal theory that would make any change that would matter? Well, I think that this court has a discretion in the way it approaches issues, and I think when the government sat by and didn't raise this issue for a long time, didn't raise the issue of whether Section 119 is being very important. Well, what does that mean? They had a good argument, but they took too long to make it so we should label a good argument not so good anymore because they were slow in bringing it? I think you can waive these arguments. Judge Mera, in the southern nuclear case, said that the government did waive the right to raise this issue, and I think that's an appropriate... But what's the theory? Latches, equitable estoppel? What's the basis? I think equitable estoppel would probably govern, in this case, latches may as well. But I think, getting back to the jurisdictional point, and I know as we talked before, we don't really need to raise that, that Section 119 and Section 702 of the APA both provide waivers of sovereign immunity. In this case, Section 119 is very broad.  It tells you who to sue. It gives you a cause of action, and if that's not a sovereign immunity waiver, I'm not sure what more the Congress could have done. They're not asking for money in this case. It didn't give them the authority to ask for money. All the cases that the court below raised on the scope of a sovereign immunity waiver really determined whether it's money damages or not money damages, and we didn't ask for money damages. The D.C. Circuit didn't give us money damages. I'd like, I see I'm into my reserve time. Yes. Oh, I'm sorry. I thought I saw a question. Okay. All right. Thank you. We'll hear from Mr. Lester next. Counsel, would you help me understand exactly what happened below? My understanding, and please correct me if I'm wrong, is that the government either moved to amend an answer to plea to defense or stated orally that they intended to try to amend their answer to plea to defense and said that they felt they were blocked from doing so by the D.C. Circuit mandamus order, and in practical effect, Judge Allegra said, no, you're not blocked. You can go ahead and do it, and that's the issue before us. Is that right? Except for the very first part, Your Honor. The way, it wasn't about the government seeking to amend an answer. This actually started when Judge Seipolt, who is now retired from the Court of Federal Complaints. Was there a motion presented to Judge Allegra having something to do with the defense? It was a response to a show cause order that Judge Seipolt had issued, and that show cause order, she issued a final decision on that, and that actually came before this court then in the PSE nuclear case appeal, which this court then decided, reversing Judge Seipolt's decision that, in fact, not only did the D.C. Circuit have jurisdiction to do what it did here, that her decision was all these cases in their entirety need to go to the D.C. Circuit. This court reversed that. In the interim, Judge Seipolt retired from the bench, and Judge Allegra got this particular case, Nebraska, which was one of the four. What precisely was the question Judge Allegra was answering? I thought the question was, may we plead a defense that we haven't pleaded before? And that is what ultimately his decision became. It was a little bit of a strange... Was there an oral motion to amend? It wasn't a motion to amend, Your Honor. It was a response to the show cause order identifying the fact that not only does this the Court of Federal Claims have jurisdiction to consider the contract matters, the decision upon which Judge Seipolt was relying, the Northern States Mandamus order, that too was, in fact, that was beyond what the D.C. Circuit had jurisdiction to entertain, and that decision should... Let me try to just ask it a different way, since I'm not getting anywhere. Do we need to decide anything in this appeal other than whether the government may plead a defense? No, Your Honor. In fact, that is the only issue properly before this court. The trial court did not decide the merits of the unavoidable delays defense, and pursuant to the jurisdictional statute with regard to appeals of interlocutory orders, the only issue that is... Issues that are before this court are those that were decided in the opinion that is on interlocutory appeal. The only issue decided there was that the government may raise the defense in this particular case, in the Nebraska case. That is the issue before this court, and that is the issue that we asked this court to decide. And that writ of mandamus is internally inconsistent and creates an untenable situation for the government. On its face, it expressly purports to control the manner in which the government can proceed with contractual remedies in the Court of Federal Claims, and ultimately, before this court. And this, despite the fact that, as this court held in PSCG Nuclear, there is nothing in the Nuclear Waste Policy Act that provides for, or deals with, damages or remedies for delay or non-performance. When you say what the D.C. Circuit did, are you talking about the actual mandamus order, or are you talking about various sentences in the explanation for the issuance of the two-part terse mandamus order itself? Well, the matter that controls the government's conduct in the Court of Federal Claims right now is the actual writ of mandamus that expressly bars the government from raising the unabordable delays clause defense in the Court of Federal Claims. What language does so? In the mandamus order itself, what language does so? It specifically states, and I'll quote, the government is to proceed with contractual remedies in the Court of Federal Claims in a manner consistent with an unconditional obligation to begin disposal by January 98. DOE is expressly precluded from concluding that its delay is unavoidable on the ground that it has not prepared a permanent repository, that it has no authority to provide storage in the interim. And this necessarily means, of course, that DOE not implement any interpretation of the standard contract that excuses its failure to perform on the grounds of acts of government in either its sovereign or contractual capacity. Well, what does that have to do with what the government can plead? As opposed to what the Energy Department, as an element of the government, should be doing before it's in court. The only purpose of the writ of mandamus is to control the government's arguments in other proceedings. How do you know that? In the opinion itself, the contractual remedies issue that the D.C. Circuit discusses is geared towards the government's future conduct with regard to the manner in which it is going to deal with these contract issues. Certainly, on its face, the language is very broad. It does not purport to limit it to non-contractual or non-court proceedings. On its face, it is not limited in a manner which would allow the government to assert its defense in court without the substantial risk of contempt sanctions by the D.C. Circuit. Mr. Lister, suppose we don't agree with your argument with respect to the scope of Section 119, the D.C. Circuit's authority to review the underlying interpretation. And suppose we conclude that the D.C. Circuit did have jurisdiction to review that interpretation. I'm sorry. Are you referring to the 1998, the Indiana-Michigan decision, essentially? Yes. So suppose we don't agree with the argument that that was invalid. And suppose, further, that all the D.C. Circuit did was to enter a declaratory judgment saying this is what the statute requires, and therefore, to the extent that the contract is inconsistent with that, it's overridden by the statute. Now, would that be binding, in your view, in the court of federal claims? To the extent that, assuming your assumption that the jurisdiction statute reaches that far, it would be enforceable only to the extent that it did not touch upon what the remedies are, if any. I'm trying to avoid that qualification simply by saying it is simply a declaratory judgment that this is what the statute says, period. Now, we would agree, I think, that if that is applicable in the court of federal claims, then any effort on your part to litigate that aspect of the unavoidable delays clause would fail, right? Well, in my understanding of the declaratory judgment to which you're referring would be that January 1998 is the date, and you can't get away with that. And you can't avoid your statutory-slash-contractual obligations by saying, well, we didn't have the facility. Right, but that doesn't reach the question, then, of what are the remedies for that non-performance, or for that delay. You can still argue anything you want about remedies as to whether restitution or damages, limitations, and so forth under that scheme. Why would you be better off under those circumstances than you are now? Well, and, Your Honor, we could also argue that the parties had included in the contract a clause that basically dealt with risk-shifting, that dealt with the possibility that factors outside the control of the parties would cause a delay. Now, that's not that the January 1998 date isn't, you know, firm and something that has to be met, but it does then deal with, well, what are the repercussions of that? What are the remedies for that? There are risk-shifting clauses. Now, suppose the statute actually said this January date is a date firm, and there are no circumstances, avoidable or unavoidable, in which it can be, delay could be justified. And the D.C. Circuit issued a declaratory judgment that said the statute means what it says. It's a date firm. What then? Well, then, Your Honor, we would have to look, I think, at whether is that a money-mandating statute. There are all kinds of statutes that contain deadlines that require the government to act by a certain date or within a certain time frame. And there are occasions when the government does not satisfy those deadlines. That doesn't mean that there is automatically a monetary remedy for the failure to meet that statutory deadline. There may be the ability of individuals or entities to sue the government in the appropriate court for specific performance or to, you know, for- But under those circumstances, you wouldn't be able to raise the unavoidable delay defense in the Court of Federal Claims under those circumstances, correct? Not necessarily, Your Honor. You'd still be able to? Potentially, particularly here where the contract was developed back, you know, 20 years ago, 27 years ago, and that contract becomes what the agreement is between the parties. Now, in the Court of Federal Claims, there could potentially be an argument in terms of dealing with the contract itself that the clause itself is illegal. That would be something that the Court of Federal Claims could review and has done in other cases, for example, the jet fuel cases that ultimately came before this court and the MAPCO line of cases. Now, ultimately, this court held that the clause that the trial court had found illegal there was, in fact, permissible. But that is something that the court dealt with there, and it identified then what the remedy should be for sort of extracting this clause out of the contract. How do we reform the contract to deal with that? And what damages are available? I understand what you're saying. It seems to me on its face the unavoidable delays clause doesn't eliminate liability. It doesn't eliminate breach. It just, on its face, under your argument, seems to eliminate a single remedy, which is a damages remedy. Is that what you're saying? That's correct. But the D.C. Circuit seemed to think that you were arguing that the unavoidable delays clause eliminated any liability, and eliminated the breach in the first place. Did you argue that to the D.C. Circuit? Well, quite frankly, Your Honor, there was very little argument about this, as the way that it came before the D.C. Circuit was a little odd because the request from the petitioners was for a writ for specific performance to order DOE to accept the fuel by 1998. So putting aside the 119 argument that Judge Bryson mentioned, you agree that Indiana-Michigan established that there was a breach of the contract. There was a breach that the deadline is specific. This Court in Maine-Yankee held that there was a breach of the contract. That's correct. And then what you're saying is that the question of the remedy for that breach is for the Court of Federal Claims and not for the D.C. Circuit. That's the only argument you're making, putting aside the 119 point. And it is an essential defense. I mean, it is quite potentially a defense with a large impact. But not a defense to liability. It's a defense to damages. Well, I mean, I will read the first sentence of the clause, which says, neither the government nor the purchaser shall be liable under this contract for damages caused by failure to perform it. But, yes, Your Honor, that's going to the issue of damages. To be clear about this, you are not arguing, putting aside 119, that the unavoidable delays clause is a defense to liability. You are only arguing it is a defense to damages. I fear we're talking about semantics, Your Honor, but I would agree with you, yes. And that is what the clause is intended to do. It's a risk-shifting, damages-shifting clause. That is not atypical in contracts. I would like to simply address, also to address. Mr. Lester, looking at the little non-precedential opinion that followed the northern states mandamus opinion, it says there's language in there, and it's referring to northern states. It says, beyond that clarification of the statute's requirements, we remitted the utilities to their remedies under the standard contract. What do you understand that to be saying? That is that the D.C. Circuit was sending the case, essentially, to the Court of Federal Claims. There's a subsequent decision from the D.C. Circuit called Wisconsin Electric, which specifically mentions the Court of Federal Claims as the appropriate court for dealing with these issues. It sent the case to the Court of Federal Claims, except for the unavoidable delays issue, which it had already held the government could not raise there. And do you understand in that language there when the D.C. Circuit said remedies, it was referring to damages and so forth? Yes, Your Honor. I believe that's our interpretation. And that is what we have litigated in the Court of Federal Claims. But what about the limitation under northern states that you could not raise the issue of unavoidable delays as a defense? That's right. It damages liability or otherwise. We have not raised the merits of the unavoidable delays clause because of the writ of mandamus. We have in numerous cases, and there are still 40-odd cases that have not been litigated before the Court of Federal Claims, that this decision here that allowing us to raise this defense potentially could affect. And the government in many of those cases has identified the fact that there is this writ of mandamus. Absent that writ, we would raise this argument, but we are bound by the writ subject to contempt sanctions by the D.C. Circuit. But is the viability of that defense properly before the Court of Federal Claims at that point? It should be before the Court of Federal Claims. It is a contract issue. It is a remedies issue. It is a remedy-shifting issue that the Court of Federal Claims is the appropriate forum to decide. Certainly, it is within its normal functions to decide issues like this. Even the Court did review the avoidable delays clause, interpreted that one. This Court ruled upon that and what its proper interpretation should be. The fact that the D.C. Circuit then elected to take on the unavoidable delays clause but to leave other clauses to the Court of Federal Claims doesn't seem to have any kind of reasoned basis when the Court of Federal Claims has exclusive jurisdiction over the matters it has exclusive jurisdiction over. The D.C. Circuit and the NWPA has exclusive jurisdiction over what it has jurisdiction over. There is no concurrent jurisdiction. There is no way to really viably separate these different contract clauses and the interpretation of these clauses and allow one court to interpret some of them and another court to interpret others. If we affirm this and you go back down there, the court would just be deciding how much money they get, right? It would be. To what extent the clause applies to shift risk for whatever period of time. It's not a clause that means that this whole period of time is covered by the clause. It's a factual issue that will have to be litigated and determined with regard to whether various events that occurred during the period of delay were in fact unavoidable and covered by the clause. The Court cannot consider any other kinds of remedies. Specific performance and things like that are not within the jurisdiction of the Court of Claims. That's right. It would not consider specific performance. That would be the D.C. District Court, I suppose. Well, the D.C. Circuit held that in fact there was no basis for specific performance and declined to issue a writ for specific performance. It held that damages would be a potentially adequate remedy and so sent the damages issues to the Court of Federal Claims. When you say risk shifting, it sounds to me like you're talking about liability. Aren't you really saying at heart that the problem you have with what the D.C. Circuit did is that it said you couldn't invoke the absence of a repository as a basis for avoiding liability? Well, or the inability to accept fuel. Okay, inability to accept in any repository or substitute. But you keep saying, well, this is really about risk shifting and there's a damages question, but doesn't at heart what the D.C. Circuit was trying to get at is to say you can't avoid liability based on this excuse. And yet the statute says nothing about liability. You think that's wrong, don't you? I mean, you think it's wrong for the D.C. Circuit to have said you can't avoid liability on this ground, and that's the argument you want to make before the Court of Federal Claims, right? Well, I think that the Court actually had no jurisdiction. I understand, but setting aside jurisdiction on the merits of that statutory issue, you think that's wrong and you want to make the contrary argument before the Court of Federal Claims. Isn't that the crux of it? Your Honor, I guess I'm just not clear about the semantics between no liability versus no damages. In terms of whether you breached the contract, do you agree that putting aside the 119 argument that the Indiana-Michigan case establishes that you breached the contract and you can't relitigate that question in the Court of Federal Claims? Well, assuming that the Indiana-Michigan court had jurisdiction to, that the 119 stretched that far. That would establish that you had breached the contract, and that would not be an open question, right? Well, the issue would be, I don't even think the D.C. Circuit would have jurisdiction even then to say that the government breached the contract. It could hold, have findings about the date. It is for the Court of Federal Claims to then decide the breach issue. Now, this court considered that issue in Mann, Yankee and found that, yes, failure to meet the deadline is a breach. So for the D.C. Circuit to step in and start making rulings about whether the contract was breached, looking at the contract, that, again, would be something that would be outside its jurisdiction. 119 simply does not, even under the most generous interpretation. You're creating trouble for yourself by over-arguing your position. Mr. Lester, what would you advise in the future is the rule to govern this type of case? Someone brings an action that reaches the D.C. Circuit, and it purports to ask the circuit to interpret a statute. When are they to stand down because that might affect a remedy? Well, I will say, Your Honor, this... What's the rule? I need a kind of a... I'm going to write the rule now on the wall. I want you to tell me what I'm writing. Where the... And, unfortunately, I don't have a good statute written in front of me, but where issues deal with... or where we're dealing with contract issues, where a statute, which is unusual, directs an agency to enter into a contract, once the contract has been entered and the party's relationship becomes defined by their contractual agreement, what the terms of that contract are, matters relating to the performance of that contract, the interpretation of that contract, are properly, under the Tucker Act, before the Court of Federal Claims. But you've heard Mr. Schilberg argue quite persuasively that the statute governs the conditions under which you can enter the contract. Why can't the District of Columbia interpret that statute to say this or that part of the contract is outside the statutory mandate? Well, actually, Your Honor, the statute only provides, and with regard to the 98-day, the only thing the statute provides is that DOE is to enter into contracts that contain these two terms. That date is nowhere else in the statute. DOE entered into the contract, and there is a judicial review provision there, and assuming that it would cover the entry of the contracts... Really, your writing on the wall is not very clear to me. We all agree they can interpret the statute. When do they have to stand down? They have to stand down... Anytime the government has entered into a contract, is what you said. But, of course, the statute can govern the terms of the contract, and that is appropriately within the D.C. Circuit's purview, is it not? Well, except it is something that, once it becomes a contractual matter, it's also a matter for the Court of Federal Claims, who would interpret the terms of the contract in light of the statutory purposes of the contract. So what rule are we going to follow in the future that everybody understands for this delineation? Well, the rules would seem to be very similar to what you have in the APA, where there are requests for monetary relief. But when you're dealing with contractual interpretation matters, damages issues, it is for the Court of Federal Claims to interpret the clauses in the contract to determine whether there's been a breach, to determine what parts have breached, to determine what remedies are available, whether restitution or monetary damages, the scope of monetary damages, to interpret the clauses of the contract in light of that. I mean, we have the Court of Federal Claims doing that already. And, in fact, this Court recently, in the Carolina Power and the Pacific Gas cases, resolved an issue with regard to the rate of acceptance that should be in the contract. Now, there could have been a claim that, oh, well, you know, maybe the statute implicitly has some bearing on what the rate ought to be. But would that be proper to go to the Court of Federal Claims? Could you provide a distinction between interpreting duties and reaching damages? Well, duties become, where the statute directs the government to enter into a contractual relationship, and the only, the obligation for the government to accept fuel by a specific date is to those parties that have contracts and not to other parties. Let's assume the contract said, we're not going to do what the statute specifically requires. Can the D.C. Circuit tell them, oh, no, you've got to follow the statute, not your contract? Well, I would presume in that case that there would have been a challenge when the contract's terms were promulgated, saying that, well, that's not proper. That's the challenge. They went to the Court. And that would have been in 1983 when the Court had jurisdiction to do that. They're trying to figure out the rule that you're coming up with. And I think you'd agree in that instance the D.C. Circuit would have full authority to act, right? Assuming that the 119 goes that far. If it wasn't there, then it would have been the district court. But yes, there would have been a court that would have had the authority to review the DOE's compliance with that statutory requirement that it develop a contract that has these two terms in it. So yes. But then once the statute of limitations expires on that, then we're dealing with the contract and contract performance. For the D.C. Circuit to come in 14 years later and say, well, one of the terms of your contract, we're just going to take it out and we're going to completely change your liability and the scope of the damages that you might have to pay, that is something... You're saying that the mandamus went too far. It hits damages. What specifically in that mandamus is the clear indication that they ordered some kind of damages effect? Specifically, the mandamus order itself, which orders DOE not to implement any interpretation of the contract that essentially allows it to invoke the unavoidable delays clause, is in their statement that they were directing the government to proceed with contractual remedies in a specific manner, is a direction that precludes the government from invoking a particular clause in the contract, a clause that has been there since 1983 and changes the scope and focus of the government's potential damages. Why can't that be read as simply telling the Energy Department what contract interpretation they have to follow, not telling the Court of Federal Claims what contract interpretation it may choose? If the Court wants to issue an order interpreting the writ that way, we're happy with that. The problem we have is there is no limiting language in this writ of mandamus. It is very broadly worded. Well, it isn't, though. I mean, if you look at the order that was entered subsequent to the mandamus order, the Court specifically says, with regard to arguments that they had written very broadly, that we did not write broadly. They say we merely prohibited DOE from implementing an interpretation that would place it in violation of its duty to assume an unconditional obligation to begin disposal by January 31, 1998. Period. So in that sense, aren't they really just saying you can't argue that we avoid liability for not accepting as of the date that's specified in the statute? I believe that it goes beyond that there is other language in the writ that precludes us from arguing the merits of the clause. But even if that were true, there is nothing in the statute itself that provides whether or not and when monetary damages should be made available for not meeting the deadline. There's nothing in the statute that says when money should be made available. But if the D.C. Circuit isn't talking about when you can get monetary damages or not, all they're saying, if this is true, is a correct reading of the mandamus, and since it's their reading, you have to give it credit, why does that interfere with your ability to make all sorts of arguments as to what the remedies should be, as long as you don't argue that you weren't obliged by way of the obligation and the breach to argue contrary to what the D.C. Circuit has said. But by saying that we cannot rely upon the unavoidable delays clause or have any excuses for providing monetary damages for certain periods of delay, the D.C. Circuit is almost ensuring that in fact money damages will be paid. And yet that is something for the Court of Federal Claims to decide, not for the D.C. Circuit, particularly where the statute itself does not identify what the remedies would be for a delay on that date. But they didn't make that order. They sent that back to the Court of Federal Claims. But with direction that certain arguments not be made. But what Judge Bryson is suggesting to you is why not construe the mandamus order to avoid the conflict that we're concerned about in this case. In other words, to construe the mandamus order, we're saying you can't use the unavoidable delays clause to say that there was no breach, but you can use the unavoidable delays clause to say that the damages remedy is not available. Your Honor, the problem for the government has been just the broad language, the lack of limitations in the writ have caused problems for the federal government in terms of how to deal with this writ without the risk of contempt sanctions. Would you be satisfied with what Judge Dyke just said? That would certainly allow us to raise the defense, yes, Your Honor. I would just very quickly like to address the merits argument that the Court raised. The plaintiff in its brief did talk about how this unavoidable delays clause has already been decided. It's just like the avoidable delays clause. And first of all, given that this is an interlocutory appeal and the trial court judge did not review the merits, that wouldn't be proper to decide that here. But just to reassure the Court, the avoidable delays clause language is actually different from the unavoidable delays clause. In Maine Yankee, this Court decided that the avoidable delays clause did not apply because what we had here was a failure to perform, not just a delay. Avoidable delays clause only deals with the event of a delay in acceptance of essay. The unavoidable delays clause, the very first sentence, talks about a failure to perform, which is the exact language that was used in Maine Yankee. So the clauses are different. So even if the Court were to look at the merits, which would be beyond this proceeding, it is not simply given that the clauses are the same. It doesn't apply. Now, don't go anywhere. You referred to the appallingly long time span. I believe you mentioned 27 years. These various proceedings have proceeded slowly. And you complained, I thought, that it was unseemly for the D.C. Circuit to be issuing a ruling in 1998 having to do with a statute that was passed, I guess, in 1982, as if they spoke too late. So they shouldn't have been able to send it. Mr. Silberg complained about delay at the hands of the government. He says that in all these proceedings, and now at this late date, I guess it goes back to 2005 or 2006, in front of Judge Allegra, all of a sudden the government is saying, well, we want to litigate this issue that maybe had been resolved previously by two courts of appeal. So the question I have for you is this. In the face of the mandamus order and opinion by Sentel in 1998, was your first opportunity to evade what you thought it precluded in 2005 in front of Allegra? Didn't you have other chances in other cases to try to raise the defense you're trying to raise in this case? And if you did have chances between 1998 and 2005 to do so and you didn't do so, then why shouldn't we give some weight to that in evaluating your position? Well, Your Honor, certainly there would have been the possibility to raise the concern about the writ in earlier cases. There was a concern about the writ of mandamus and the need to comply with it to avoid contempt sanctions. Certainly over time, the significance and the magnitude and impact of the writ of mandamus came to light. And even when the issue came to the forefront in this particular case, there were concerns about whether or not doing so would somehow step on that writ and create contempt problems. Well, why shouldn't we say that the government took a decade to figure out what it wanted to do and that's just too late? Well, Your Honor, this is a jurisdictional issue and jurisdiction is not waived even over periods of time. And I will say, in this case and numerous other cases pending before the Court of Federal Claims that have not been litigated... I'm not talking about jurisdiction. I'm talking about you're trying to raise a defense now that you could have raised long ago in other cases but didn't. Why shouldn't we just say, too late to change now? Well, there's no basic... The government has not voluntarily failed to raise the merits of the defense either here or in other cases. We have felt bound by this writ of mandamus and by the D.C. Circuit. Sure, but you could have asked earlier judges in earlier cases for the permission that you did finally ask Allegri to give you in 2005. Well, it is a continuing writ of mandamus. It is continuing jurisdiction by the D.C. Circuit. And I understand that perhaps the government's fears and concerns about possible contempt sanctions were... No, that's not the point. Whether the fears are the same as before or higher or lower isn't the point. The point is, if you had a fear, you could have raised it before and asked a Court of Federal Claims judge in 1999 to let you plead the defense, but you didn't do that. It bothers me that you didn't do that for 10 years. Well, Your Honor, this issue will come up before this court in another case called Southern Nuclear where the trial court found that the government had, in fact, waived the unapologetic defense clause in our defense in that case. So that is an appeal pending before this court and presumably this court will resolve that there. But even if the government has waived the argument in cases that have been litigated or cases that have been tried, there are still a lot of other cases that still have to be looked at and there have been no merits determinations at all. And therefore, in those cases at least, we should be allowed to raise this defense. Certainly, I'm not aware of any case law that provides for a waiver of defense in light of a writ of mandamus that bars the invocation of the clause because of the manner in which the issue was raised. All right. Thank you. Mr. Silber, you have about seven minutes left. Thank you, Your Honor. First, the government's opportunity to raise this, which they actually raised in January 2005, was not because someone invited them to raise this issue. This was not on the table in Judge Seipholz's order to show cause. They finally decided that it was time to try again on this issue. The government never gives up on issues in any of these cases. We see the same issue time and time again. There are 70 cases out there. We see the same issue 70 times. They could have raised the issue before 2005. They chose not to. With respect to the first sentence in the unavoidable delays clause, failure to perform, the government's reading of that would make the second sentence, which uses the term delays, surplusage. If failure to perform is not a delay, then you don't need the second sentence, which deals with the delays, because then everything is covered. It obviously includes delays. It covers delays. The title of that section is delays, and it's only those delays that arise under the contract, and we're not there. With respect to liability, the D.C. Circuit did not determine liability. This Court in Maine Yankee in the United States Power determined liability as to the entire industry. The D.C. Circuit didn't determine whether there was a breach of contract. It specifically directed the utilities to go back to the Court of Federal Claims to exercise their statutory remedies. The government... I find that very confusing. You're saying the D.C. Circuit didn't decide that there was a breach of contract? No, because there had been no breach at the time. This Court in P.S.C. and G. stated that there couldn't be a breach until... But they decided there would be a breach of contract if they didn't take it. Whether there's a breach of contract depended on whether the government was going to perform in 1998. We knew... But my question was, they did decide that there would be a breach of contract if they didn't take it after 1998. I don't believe that that's the case. I think they stated what the statutory obligation was and that the government's interpretation of the Unavoidable Delays Clause would make it impossible for the utilities to pursue their remedies in light of the meaning of the statute. Mr. Silberg, let me read from the District of Columbia. DOE cannot now render its obligation contingent and free itself of the cost caused by its delay. That's not remedial? I don't believe... It is to the extent... The government can't free itself of the costs? You're talking directly about costs. It is not saying... Of the delay. It is not saying what the costs are. It is not saying how one obtains those costs. It's not saying whether you have a breach of contract. When you start talking about costs, you're not talking about duties, are you? You're talking about remedies. The duty is the unconditional obligation to perform. There are things that flow from that unconditional obligation. Ultimately, it would show up on the remedy side of the ledger, but that's not what the court was asked to do. That's not what the court did. The court was looking at what DOE is required to do on a statutory basis. I would also note that unless we're talking about the jurisdictional issues, we don't even get here for the reasons... It really goes to the issue of liability, doesn't it? When the D.C. Circuit did not mention liabilities, but if they go directly to liabilities... I think this court determined liabilities very clearly. What did the circuit court do with northern states then? If not liability? It looked at what the statutory obligation was. It repeated that DOE had an unconditional statutory obligation. It said that DOE's attempt to sidestep that by saying, well, it's avoidable, it's an unavoidable delay, and therefore all we have to do is push the schedule out, and now we know you could push the schedule out a century, and there's nothing. Where is the unconditional obligation if the schedule is a repository in 2020? What if the second clause had said that there was no liability whatsoever except for $500,000? If there was a limit on liabilities in the contract and the court said, no, you can't do that? I think that would have been a contract issue that would have been looked at at the time the contract was propagated. That's not the case we have here. Isn't this an indirect run-around to the issue of sovereign immunity? Because basically the contract elimination of liability, the creation of total liability, generates total recovery because it eliminates the basic defense that the government has. Well, we certainly haven't seen that. The case that we're going to trial with a week from Tuesday, the government is arguing that the liability is zero. In the first case that was litigated that this court heard in Indiana, Michigan, there was no liability. The government will often come in and say, we saved you money by breaching the contract. Believe that. We're not talking about that kind of an issue. That has nothing to do, I believe, with sovereign immunity. Anything further? Let me just check. The government has, in fact, tried to make indirectly the Unavoidable Ways Clause in a number of these cases. It's not that they haven't tried. They've put on testimony that they haven't been given enough money to make the program go forward. It's not that they haven't had opportunities to raise that issue with the courts. They have tried, they have failed, and I think rightly so the courts have rejected that, and I think this court should too. I would urge this court to solve this dilemma by taking the approach that we started the discussion with, that you need not reach this issue because we're not talking about an issue which really even comes within the Avoidable Ways Clause. Thank you, Your Honor. All right. The appeal is taken under advice.